# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | **Chapter 7** |
| DUSTIN D. DEVRIES, ) | Bankruptcy No. 11-00178 |
| ) | |
| Debtor. ) | |
| ) | |
| FARMERS STATE BANK, ) | |
| ) | |
| Plaintiff, ) | Adversary No. 11-9008 |
| ) | |
| v. ) | |
| ) | |
| DUSTIN D. DEVRIES, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DETERMINATION OF DISCHARGEABILITY UNDER SECTION 523(A)(6)

This matter came before the Court on Farmers State Bank's Adversary claiming that the debts owed to Farmers are non-dischargeable under Bankruptcy Code § 523(a)(6), because Debtor willfully and maliciously injured Farmers State Bank ("Farmers"). The Court conducted trial and accepted post-trial briefing. J. Mathew Anderson represented Debtor, Dustin D. Devries. Mark Walk represented Plaintiff, Farmers. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor filed a Chapter 7 Voluntary Petition. Farmers had extended to Debtor three purchase money security interest loans. Debtor used the loans to purchase a Harley Davidson motorcycle and Chevrolet truck. Debtor defaulted on the loans before filing bankruptcy. Farmers filed a replevin action against Debtor in state court. Judgment was entered against Debtor and Farmers attempted to recover the truck and motorcycle.

With assistance from the Floyd County Sheriff's Department, Farmers was able to recover the motorcycle, although a number of its parts and accessories were missing. The truck has never been recovered. Farmers filed this adversary alleging the three loans are non-dischargeable under § 523(a)(6), because Debtor willfully and maliciously caused Farmers injury. The Court finds that Debtor did willfully and maliciously cause Farmers injury, and accordingly, the debt is non-dischargeable.

## FACTS AND PARTIES' ARGUMENTS

Debtor, Dustin D. DeVries, filed a Chapter 7 Voluntary Petition on January 31, 2011. He listed his address as 1843 Rotary Park Road, Charles City, Iowa. Farmers State Bank was identified as a creditor. In 2009, Farmers had extended three purchase money security interest loans to Debtor. The items securing the debts were a 2003 Chevrolet Duramax diesel pickup truck ("truck") and a 2001

2

Harley Davidson Heritage soft-tail motorcycle ("motorcycle"). The filing indicated the vehicles, both the motorcycle and the truck, were located at 1843 Rotary Park Road, Charles City, Iowa. At the time of filing, the truck was valued at $15,000.00, and the motorcycle was valued at $8,000.00. The filing indicated debtor intended to surrender both vehicles. At the time of filing, Debtor owed $13,768.65 under the truck loan. No portion of the truck loan was unsecured. Debtor owed $17,789.98 under the motorcycle loan, and $9,789.98 of this amount was unsecured. Under a third purchase money security interest, Debtor owed $2,228.40. Both the truck and motorcycle were listed as collateral. In total, Debtor owed Farmers $33,787.03 at the time of the bankruptcy filing. In his Statement of Intention he indicated that both vehicles were located at his address at 1843 Rotary Park Road.

In his Statement of Financial Affairs, Debtor listed his 2008 income as $7,000.00 from Dietrich Farms, and his 2010 income as $3,000.00 from "scrapping." He indicated he had received no additional income from any source in the two years before filing. Debtor further indicated he was the Defendant in a replevin action in Floyd County Iowa District Court, case number LACV029711, brought by Farmers.

On February 23, 2011, Farmers filed this adversary. Trial was held on November 1, 2011. Debtor failed to appear at trial, but counsel was present.

3

Debtor had been released from the Floyd County jail earlier that morning. The time between his release and trial was sufficient to allow for his appearance, however, Debtor still failed to appear.

Farmers presented the testimony of two witnesses: Brent Winter, Assistant Vice President at Farmers State Bank, and Joel Cannon, a Sheriff Deputy for Floyd County Iowa. Mr. Winter was involved with approving Debtor for the current loans. The first loan agreement was dated April 9, 2009. It was for $13,789.85, with an APR of 9.809%. The truck was collateral. The second loan agreement was dated July 14, 2009. It was for $17,789.98, with an APR of 9.761%. The motorcycle was collateral. The third loan agreement was dated August 25, 2009. It was in the amount of $2,062.73, with an APR of 9.914%. Both the truck and motorcycle served as collateral.

Shortly after obtaining the loans, Debtor ceased making payments. Farmers had a hard time locating Debtor. It sent Notices to Cure to his address on file. (<u>See</u> Plaintiff Exh. 1.) In addition to attempting to locate Debtor, Farmers made a number of attempts to locate the truck and motorcycle. This included Farmers' representatives driving to Charles City to search for the vehicles. Unsuccessful in its attempts to find Debtor or the vehicles, Farmers filed a replevin action in the Iowa District Court for Floyd County. The Court entered judgment in Farmers'

favor on December 21, 2010, for the truck and motorcycle in the amount of $38,948.63.

Sheriff Deputy Joel Cannon of the Floyd County Sheriff's Department testified he received the writ of replevin on December 23, 2010. Deputy Cannon has been with the Sheriff's Department for twenty-seven (27) years. Deputy Cannon began to look for the truck and motorcycle at places Debtor had lived or associated. In early January, Deputy Cannon learned the motorcycle was being stored at a farm owned by Monty Walters. Deputy Cannon recovered the motorcycle from Walters' farm on January 3, 2011. When the motorcycle was recovered, however, numerous parts were missing. Testimony from Deputy Cannon and Winter revealed chrome, the windshield, the saddlebags, the floorboards, plug wires, and blinkers were missing.

Approximately one week after the deputy recovered the motorcycle, Debtor was arrested. Deputy Cannon questioned him about the location of the missing motorcycle parts. Debtor told Deputy Cannon that the parts were located on a separate farm owned by Mr. Walters. Debtor also provided the name of two individuals to whom he had given the chrome parts and lights. Deputy Cannon retrieved the missing parts, but the parties could not confirm if the parts obtained were the original parts. Farmers sold the motorcycle once the missing parts were obtained but provided no testimony about the price obtained.

5

Deputy Cannon also questioned Debtor about the location of the truck. Debtor told Deputy Cannon it was in a corn crib on Ivory Avenue, southeast of Rudd, Iowa. Deputy Cannon told Debtor he knew this was untrue because he had already looked there for the truck. At that time, Debtor offered no other potential locations of the vehicle.

Debtor had indicated to Farmers that he would return the truck to a Farmers State Bank in Grafton. He told Farmers the truck was at a friend's house, but that he would retrieve and surrender it. Debtor did not surrender the truck.

Around June of 2011, Debtor called the Floyd County Sheriff's Office to attempt to report that his truck had been stolen from Ivory Avenue. The Deputy who fielded the call warned Debtor of the consequences of making false reports and no report was taken. When Debtor filed bankruptcy, he did not report the truck as stolen. Subsection 8 of the Statement of Financial Affairs asks Debtors to: "List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case." Debtor checked the box "none." Debtor has filed no amendment to the Statement.

The witnesses indicated that Debtor was a "junker" who collected and sold scrap metal and old cars. Farmers believes Debtor "parted out" the truck, by stripping it down and selling the parts. Deputy Cannon testified Debtor has a

general reputation in the community for being a thief. Deputy Cannon indicated Debtor had been arrested numerous times and convicted of thefts.

Debtor did not voluntarily cooperate in returning the truck or motorcycle to Farmers. The truck has never been recovered. Farmers has lost money on both the truck and motorcycle.

Other than cross-examining Deputy Cannon and Winter, Debtor's attorney was unable to present any evidence in support of the absent Debtor's defense. Following the testimony, Farmers' attorney requested the Court take judicial notice of a number of criminal cases against Debtor in the Iowa courts. Counsel offered the files for those cases. Debtor objected to the Court taking judicial notice, arguing the criminal proceedings were irrelevant to the issues at hand. At trial, the Court withheld ruling on the judicial notice issue. The parties were granted the opportunity to present post-trial briefing. Farmers filed proposed findings of facts and conclusions of law. (ECF Doc. # 19.) Debtor presented no post-trial briefing.

## CONCLUSIONS OF LAW AND DISCUSSION

The current adversary requests the Court determine whether debts owed to Farmers are non-dischargeable under 11 U.S.C. § 523(a)(6). Before reaching that issue, however, the Court will address Farmers' request for judicial notice of the criminal cases against Debtor.

7

1. **Judicial Notice**

Farmers requests the Court to take judicial notice of six of Debtor's criminal convictions: 1) Floyd County District Court action FECR013422, for False Reporting; 2) Floyd County District Court action AGCR017999, for Theft in the Third Degree; 3) Floyd County District Court action FECR017700, for Theft in the First Degree; 4) Floyd County District Court action FECR015431, for Theft in the Third Degree; 5) Chickasaw County District Court action FECR005731, for Theft in the Third Degree; and 6) Howard County District Court action FECR013388, for Theft in the Third Degree. Farmers also asks the Court to take judicial notice of Cerro Gordo County District Court action SPCV064351, a civil forfeiture action in which Debtor agreed to forfeit stolen property in his possession.

Debtor's counsel objected to admission of this evidence arguing that the evidence was irrelevant to the current issue, was not included or discussed in Farmers' pre-trial statement, and was not listed on Farmers' exhibit list. Debtor believes each county's District Court Clerk of Court should have been required to appear for this evidence to be admissible. Debtor's counsel admits that Farmers listed Debtor as a witness, but that Debtor failed to appear. Farmers' post-trial briefing provides no analysis about why the Court should take judicial notice of these actions, and only presents the judicial notice standard.

> Pursuant to Federal Rule of Evidence 201(b), "A judicially noticed fact must be one not subject to reasonable dispute in

> that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court may take judicial notice at any stage of the proceeding whether or not the notice is requested by the parties. See Fed. R. Evid. 201(c), (f). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998) (citations omitted); see also Holloway v. Lockhart, 813 F.2d 874, 879 (8th Cir. 1987) (citing Fed. R. Evid. 201(b) advisory committee notes).

Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 796–97 (8th Cir. 2009). "Caution must . . . be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." Id. at 797. Rule 803(22) of the Federal Rules of Evidence provides:

> (22) Judgment of a Previous Conviction. Evidence of a final judgment of conviction [is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness] if: (A) the judgment was entered after a trial or guilty plea, but not a nolo contendere plea; (B) the conviction was for a crime punishable by death or by imprisonment for more than a year; (C) the evidence is admitted to prove any fact essential to the judgment; **and** (D) when offered by the prosecutor in a criminal case for a purpose other than impeachment, the judgment was against the defendant. The pendency of an appeal may be shown but does not affect admissibility.

Fed. R. Ev. 803(22) (emphasis added). Farmers did not offer any evidence on whether a trial was held in the matters or whether Debtor pled guilty. Further, it

9

presented no evidence about whether these crimes were punishable by imprisonment in excess of one year.  See id.

The joint pre-trial statement lists four witnesses:  Dustin DeVries; Farmers State Bank representative, Randy Hanna; Brent Winter; and Deputy Sheriff Joel Cannon.  Farmers' theory supporting its claim for relief stated in part:  "Plaintiff will rely upon the loan documents (including notes and title), testimony of the Plaintiff, its employees, Deputy Joel Cannon and the Defendant [Debtor]." (Pretrial, ECF Doc. #11.)

Farmers argues that since Debtor has been found guilty of crimes in these actions, the cases are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Am. Prairie Const. Co., 560 F.3d at 797.  Farmers presents no argument about the relevancy of these convictions to the current action, nor any argument about how these convictions overcome hearsay issues.  See id.

The Court denies Farmers' request to take judicial notice of the convictions. First, other than counsel's statements, no evidence to support these convictions has been presented.  No docket sheet, or like document was presented to the Court. Second, while these convictions could arguably be relevant to the current action, Farmers has not provided any evidence to support the relevance, or any argument to support a finding that the convictions fall under any of the hearsay exceptions.

10

Further, the Court finds that adequate evidence has been presented to support Farmers' claim without reliance on the state court convictions. Consequently, the Court will deny Farmers' request that judicial notice be taken as to Debtor's past convictions.

## 2. Section 523(a)(6)

### a. Legal Standard and Elements of Claim

Section 523 provides exceptions to discharge. Section 523(a)(6) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C. § 523(a).

> Willful and malicious are two distinct requirements that [must be proven] by a preponderance of the evidence. Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999). . . . "[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Geiger, 523 U.S. at 61, 118 S. Ct. 974; In re Patch, 526 F.3d at 1180. . . . Further, the debtor need not intend the consequences of his conduct to cause a willful injury. In re Patch, 526 F.3d at 1180. . . . Maliciousness is conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm." Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001) (quoting Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985)).

In re Porter, 539 F.3d 889, 893–94 (8th Cir. 2008).

"To establish that a debt is nondischargeable consistent with this exception, the party seeking to prevent discharge must show by a preponderance of the evidence that the debt is for both 'willful . . . injury' and 'malicious injury.'" In re Patch, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting 11 U.S.C. § 523(a)); see Grogan v. Garner, 498 U.S. 279, 290 (1991). A preponderance of the evidence standard "simply requires the trier of fact 'to believe that the existence of a fact is more probable than its nonexistence before [the court] may find in favor of the party who has the burden to persuade the (judge) of the fact's existence.'" In re Winship, 397 U.S. 358, 371–72 (1970); see Grogan, 498 U.S. at 290. "'Preponderance of the evidence' means: 'Evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not.'" In re Sorrell, 292 B.R. 276, 288 (Bankr. E.D. Tex. 2002) (quoting Braud v. Kinchen, 310 So.2d 657, 659 (La. App. 1975)). "It is evidence which is more credible and convincing than the other evidence brought." Id.

### b. Discussion

"The plain language of § 523(a)(6) requires courts applying the exemption to first determine exactly what 'injury' the debt is 'for,' and then determine whether the debtor both 'willful[ly] and malicious[ly]' caused the 'injury.'" In re Patch, 526 F.3d at 1181.

### i. Injury

The Court must first determine whether Farmers suffered an "injury" as a result of Debtor's actions. "Injury is defined as 'the invasion of any legally protected interest of another.'" In re Bullard, 451 B.R. 473, 481 (Bankr. E.D. Ark. 2011) (quoting In re Nangle, 257 B.R. 276, 282 (B.A.P. 8th Cir. 2001)). "[T]he injury must invade the creditor's legal rights. Section 523(a)(6)'s term 'willful . . . means a deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury (injuria) in the technical sense, not simply harm to a person.'" In re Best, 109 Fed. App'x 1, 6 (6th Cir. 2004) (quoting In re Geiger, 113 F.3d 848, 852 (8th Cir. 1997)). "'Injury' means the violation of another's legal right, or the infliction of an actionable wrong. Black's Law Dictionary (9th ed. 2009). Accordingly, the invasion by the debtor of a legally protected right of the victim constitutes the 'injury' . . . ." Larsen v. Jendusa-Nicolai, 442 B.R. 905, 914 (E.D. Wis. 2010).

Farmers has provided adequate, uncontested, evidence that it sustained a legal injury as a result of Debtor's failure to properly surrender the motorcycle or the truck. See id. While the motorcycle was ultimately tracked down by a Deputy Sheriff, it was partially stripped and required Farmers to expend money to repair it. The truck was never located. Debtor's breach of the loan agreements, and subsequent failure to surrender the collateral, has resulted in "injury" to Farmers in

13

the form of financial loss. Farmers has a legal interest in both the truck and the motorcycle. Debtor invaded those legal interests, resulting in injury.

### ii. Willful

As the Court has determined that an injury has occurred, it next must determine whether said injury was caused willfully. "In the statutory text, the world 'willful' precedes the word 'injury,' which led the Supreme Court, in Geiger, to interpret 'willfulness' as requiring 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Bullard, 451 B.R. at 480 (quoting Geiger, 523 U.S. at 61–62).

> The meaning of "willful" under § 523(a)(6) is controlled by the Supreme Court's decision in Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998). There, the Court resolved a circuit split over the meaning of "willful," holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Id. at 64, 118 S. Ct. 974. Because the word "willful" in § 523(a)(6) modifies the word "injury," the Court concluded that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Id. at 61, 118 S. Ct. 974. Like the en banc Eighth Circuit decision it affirmed, the Court relied on the Restatement (Second) of Torts, observing that "the [§ 523](a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' . . . . [which] generally require[s] that the actor intend 'the consequences of an act,' not simply 'the act itself.'" Id. at 61–62, 118 S. Ct. 974 (quoting the Restatement (Second) of Torts §8A cmt. A (1964)).

Patch, 526 F.3d at 1180. In the Eighth Circuit, "the 'willful' element is a subjective one, requiring proof that the debtor desired to bring about the injury or

14

was, in fact, substantially certain that his conduct would result in the injury that occurred." Id. at 1180–81; see Porter, 539 F.3d at 894.

Here, the Court finds that Debtor was certain or substantially certain that Farmers would be injured as a result of his conduct. See id. Debtor's bankruptcy filings indicated that the motorcycle and truck were located at 1843 Rotary Park Road, Charles City, Iowa. Neither vehicle was located there, either before or after the bankruptcy filing. The motorcycle was found partially stripped on a third-party's farm and the missing pieces were found with a number of different individuals in the area. The Court finds this evidence strongly infers that it was Debtor's intent to dismantle the motorcycle and sell the pieces, contrary to Farmers' ownership rights. By dismantling the motorcycle, and attempting to conceal its location, Debtor was aware that he would cause injury to Farmers. See id.

The evidence presented similarly strongly infers that Debtor has likely disassembled the truck and sold the pieces. The Court bases this finding on the state of the motorcycle when recovered, Debtor's refusal to disclose the location of the truck, and the Debtor's false theft report. Debtor has not been honest in his bankruptcy filings about the location of the vehicle, nor was he forthcoming with Sheriffs' Deputies as to the location of the vehicle. The Court finds that Debtor's attempt to report the vehicle stolen was an attempt to protect himself in the current

bankruptcy. The Court finds that the truck was not stolen, and that Debtor has willfully concealed its location to Farmers and the Court—causing Farmers injury. Consequently, the Court finds that Debtor willfully injured Farmers.

### iii. Maliciously

Although the injury was caused willfully, the Court must also determine that the actions causing the injury were done "maliciously" for the debts to be non-dischargeable under § 523(a)(6). "A wrongful act is malicious if . . . there exists a 'knowing wrongfulness or knowing disregard of the rights of another.'" In re Fors, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001) (citations omitted). "An act may be found to be malicious even in the absence of a specific, subjective intent to injure." Id. "Maliciousness is conduct 'targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm.'" Porter, 539 F.3d at 894 (citations omitted).

Debtor's conduct was specifically targeted at Farmers. Disassembling the vehicles and selling the pieces to other individuals was an attempt by Debtor to gain additional income from property that did not belong to him. Debtor indicated in his filing that he would be surrendering both the motorcycle and the truck, yet acted in contravention of this statement through the proceedings. Debtor knew his acts were virtually certain to cause Farmers harm—by depriving it of collateral. Debtor's attempts to cover-up the location of the vehicles provide additional

16

evidence of debtor's knowledge that his acts were wrong and were another step in making certain Farmers' rights were harmed. This knowing disregard for Farmers' rights—if not specific intent to harm Farmers—exhibits Debtor's malicious intent. See Fors, 259 B.R. at 137. The Court finds that Debtor maliciously injured Farmers by attempting to sell the motorcycle, and concealing the truck.

### c. Conclusion

As Debtor willfully and maliciously injured Farmers, the three Purchase Money Security Interest loans are non-dischargeable under Bankruptcy Code § 523(a)(6). The Court, however, notes that while the debts are non-dischargeable, Farmers did repossess the motorcycle and subsequently sold it. Accordingly, a hearing will be held at which Farmers will be required to prove the sum received through the sale of the motorcycle—less the costs associated with the motorcycle's sale, recovery, and repair. Said sum will be deducted from the amount Debtor owes to Farmers—and thus the amount that is non-dischargeable—under the three loan agreements.

**WHEREFORE,** Farmers State Bank's request for the Court to take judicial notice of Debtor's prior state-court criminal cases is **DENIED**.

**FURTHER,** Plaintiff's Complaint Objecting to Discharge of Debtor is **GRANTED**.

**FURTHER,** Plaintiff's claim is excepted from discharge for willful and malicious injury under 11 U.S.C. § 523(a)(6).

**FURTHER,** a hearing shall be scheduled by separate order at which Farmers State Bank shall present evidence concerning the sum received from the sale of the motorcycle, less costs and expenses.

Dated and entered:
February 17, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE